

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
FEB 22 2016
ARTHUR JOHNSTON
BY_____ DEPUTY

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN (JACKSON) DIVISION**

**RALPH ARNOLD SMITH, JR.**                                                    **PLAINTIFF**

**VS.**                                        **CAUSE NUMBER** _3:16cv129cwR-FKB_

**JAMES M. HOOD, III, IN HIS INDIVIDUAL CAPACITY;**
**ALBERT LEE ABRAHAM, JR., INDIVIDUALLY;**
**CYNTHIA T. EUBANK, IN HER INDIVIDUAL CAPACITY;**
**STANLEY ALEXANDER, IN HIS INDIVIDUAL CAPACITY;**
**ONETTA WHITLEY, IN HER INDIVIDUAL CAPACITY;**
**RALPH E. CHAPMAN, INDIVIDUALLY;**
**H. SCOT SPRAGINS, INDIVIDUALLY;**
**LAWRENCE JOHN "LUCKY" TUCKER, JR., INDIVIDUALLY;**
**REB McMICHAEL, M.D., IN HIS INDIVIDUAL CAPACITY;**
**LUKE SAVOIE, IN HIS INDIVIDUAL CAPACITY;**
**PAUL SCOTT McGINNIS, M.D., IN HIS INDIVIDUAL CAPACITY;**
**JAMES G. CHASTAIN, IN HIS INDIVIDUAL CAPACITY;**
**THE MISSISSIPPI DEPARTMENT OF MENTAL HEALTH;**
**AND**
**JOHN DOES 1-20, WHOSE NAMES AND**
**IDENTITIES ARE UNKNOWN AT THIS TIME**                            **DEFENDANTS**

**COMPLAINT**

**JURY TRIAL DEMANDED**

COMES NOW Ralph Arnold Smith, Jr. ("Dr. Smith"), by and through his attorney, pursuant to 42 U.S.C. §§1983, 1985, 1988, 42 U.S.C. §§12131-12134 (the *Americans With Disabilities Act*), Article III of the United States Constitution; 28 U.S.C. §1367 (supplemental and pendent jurisdiction), and any other applicable federal law, and files this, his *Complaint*, and in support of this *Complaint*, respectfully shows to this Court the following:

1

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over the claims set out in this *Complaint* pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343.

2.      Venue is proper in this Court under 28 U.S.C. §1391.  One or more defendants are residents of this Court's judicial district, and all defendants are believed to be residents of the state of Mississippi (28 U.S.C. §1391(b)(1).  If any defendant is not a resident of the state of Mississippi, venue is proper in this Court under 28 U.S.C. §1391(b)(2) because a substantial part of the events and/or omissions giving rise to Dr. Smith's claims occurred in this Court's district and division (28 U.S.C. §1391(b)).

3.      This is a civil action by Ralph Arnold Smith, Jr. ("Dr. Smith") seeking damages against the Defendants for committing acts, under color of state law, that violate rights guaranteed to Dr. Smith under the Constitution and laws of the United States, including but not limited to the following:

    a.  the Fourth Amendment to the Constitution of the United States (unlawful searches and seizures of Dr. Smith's person);

    b.  the Fifth Amendment to the Constitution of the United States (deprivation of substantive and procedural due process)

    c.  the Eighth Amendment to the Constitution of the United States (prohibition against cruel and inhuman punishment);

    d.  the Fourteenth Amendment to the Constitution of the United States (deprivation of substantive and procedural due process, and deprivation of Dr. Smith's guaranteed right to equal treatment of the laws);

2

e.  42 U.S.C. §§12131-12134, known as the *Americans With Disabilities Act*;

f.  Section 504 of the Rehabilitation Act of 1973, codified at 29 U.S.C. §701, et seq.;

g.  Federal and state constitutional deprivations and violations of rights guaranteed to Dr. Smith by the civil commitment statutes of the state of Mississippi codified as Mississippi Code §41-21-61 through §41-21-107, including but not limited to denial of the federal substantive and procedural due process and equal protection rights set out in *Jackson v. Indiana*, 406 U.S. 715 (1972);

h.  Other state law claims, including civil conspiracy, that may (or may not) be subject to the Mississippi Tort Claims Act (§§11-46-1 through 11-46-23); and other related state law claims as set out in this Complaint, which are part of and are directly related to Dr. Smith's federal claims.

4.      Dr. Smith also seeks damages against the Defendants for torts under Mississippi law which are related to federal claims and actions that are within the original jurisdiction of this Court, and form part of the same federal claims and controversies. Pursuant to 28 U.S.C. §1367, this Court has supplemental and pendent jurisdiction over Dr. Smith's state law claims.

5.      The Defendants' unlawful and/or criminal acts were and are the legal and proximate cause of Dr. Smith's damages. All of the Defendants' actions are intentional and were intentional, and show a deliberate and willful indifference to the rights of Dr. Smith.

6.      Mary K. Smith (Mrs. Smith) is the wife of Ralph Arnold Smith, Jr. As Dr. Smith's wife, next friend, and duly authorized agent, Mrs. Smith has retained counsel on behalf of Ralph Arnold Smith, Jr. to file and pursue these claims.

## PARTIES

7.     Dr. Smith was adjudicated incompetent to proceed legally in the Circuit Court of Leflore County, Mississippi on October 8, 2014.  Dr. Smith is currently housed unlawfully and illegally by the Mississippi Department of Mental Health at the Forensic Unit of the Mississippi State Hospital in Rankin County, Mississippi.   Civil commitment affiant Timothy Jones filed the civil commitment petition against Dr. Smith in the Chancery Court of Leflore County, Mississippi on October 15, 2014.

8.     Defendant James M. Hood, III (Defendant Hood) is a defendant in his individual capacity.  Defendant Hood, as Attorney General for the State of Mississippi, is the state's chief legal officer.  Defendant Hood at all relevant times was and is acting under color of state law.

## Defendant Jim Hood's "Necessary Self Defense"



Crime Scene Reconstruction by "The Evidence Room" of Cleveland, Ohio

4

Defendant Hood has been using his office and employees, and the Mississippi Department of Mental Health, to unlawfully and wrongly seek vilification, incarceration, and institutionalization of Dr. Smith by claiming that Dr. Smith is dangerous. The motive for this wrongful conduct is to cover-up Defendant Hood's and other persons' wrongdoing.  Defendant Hood has "skin in the game" because Defendant Hood continues to cover-up the truth about the killing of Keaira Byrd at the office of Defendant Hood's personal friend, Lee Abraham.

The best evidence shows that Keaira Byrd was killed with an execution-style shot to the top of the head after Mr. Byrd was already down.  Defendant Hood and other state actors claim that the fatal execution-style headshot came from the service weapon of Larry Ware, an agent/investigator for the Attorney General's Office, who Defendant Hood directed to participate in the Greenwood operation.

In his official written statement to law enforcement after the shooting, AG Investigator Larry Ware falsely claimed that he exchanged gunfire with Keaira Byrd and then...

> Investigator Ware did what he has been trained to do in these type of deadly encounters and was able to take evasive action and started running to get (a)way from the suspects.

Obviously, AG Investigator Ware could not run away, and still shoot Keaira Byrd in the top of the head in the doorway of Lee Abraham's office.  Inserted above is a screen shot from a video reconstruction of the most probable shooting scenario at Lee Abraham's office. This video reconstruction was created by "The Evidence Room" of Cleveland, Ohio from available evidence.  Even with the evidence that Keaira Byrd was shot "execution-style," while already on the ground at Lee Abraham's office, **Defendant Hood falsely and publicly claims that the shooting of Keaira Byrd was "in the necessary self-defense of our law enforcement officers" (Jim Hood: _The Clarion Ledger_, May 10, 2012).**

5

Later, a New York-based private investigator (retired NYPD officer William Acosta) discovered that Keaira Byrd never fired a shot (there is not a single bullet casing from the weapon that Byrd supposedly fired multiple times). The State Crime Lab disclosed that there are "no latent fingerprints of value" on the weapon that Keaira Byrd supposedly carried and fired. In crime scene photos, the weapon that Byrd supposedly fired (which has no latent fingerprints of value) is seen in two (2) different positions. These patently false claims of self-defense by Defendant Hood, in light of the evidence that is available, support the federal and related underlying state claims in this case against Defendant Hood. Defendant Hood has a personal financial motive **and** a personal liberty motive to unlawfully use multiple attorneys and resources from the Attorney General's Office and the Mississippi Department of Mental Health during Dr. Smith's civil commitment case to wrongly and unlawfully seek the continuing vilification and incarceration of Dr. Smith.

9.      Defendant Albert Lee Abraham, Jr. (Defendant Abraham) is a resident of Leflore County, Mississippi. Defendant Abraham is an attorney whose office is in Greenwood, Mississippi. Defendant Abraham willfully acted jointly with Defendant Hood, Defendant Chapman, Defendant Spragins, Defendant Tucker, and other defendants, as set out in this Complaint, **and was present at Abraham's office during the execution-style killing of Keaira Byrd**.

10.      Defendant Cynthia T. Eubank (Defendant Eubank) is a resident of the state of Mississippi. Defendant Eubank is an Assistant Attorney General and is the lead attorney for the Mississippi Department of Mental Health. Defendant Eubank at all relevant times was and is acting jointly with Defendant Hood, Defendant Alexander, Defendant Whitley, Defendant McMichael, Defendant Chapman, and others under color of state law.

6

11.     Defendant Stanley Alexander (Defendant Alexander) is a resident of the state of Mississippi. Defendant Alexander is an Assistant Attorney General who is the Director of the Public Integrity Division of the Attorney General's Office. Defendant Alexander at all relevant times was and is acting jointly with Defendant Hood, Defendant Eubank, Defendant Whitley, Defendant McMichael, Defendant Chapman, Defendant Spragins, and others under color of state law.

12.     Defendant Onetta Whitley (Defendant Whitley) is a resident of the state of Mississippi. Defendant Whitley is a Deputy Attorney General for Defendant Hood. Defendant Whitley at all relevant times was and is acting jointly with Defendant Hood, Defendant Eubank, Defendant Alexander, Defendant McMichael, Defendant Chapman, and others under color of state law.

13.     Defendant Ralph E. Chapman, Esquire (Defendant Chapman) is an attorney who is a partner in the law firm of Chapman, Lewis and Swan of Clarksdale, Mississippi. Defendant Chapman is a resident of the state of Mississippi. Defendant Chapman at all relevant times was working jointly with and in concert with Defendant Hood, Defendant Abraham, Defendant Spragins, Defendant Tucker, and named defendants from the Attorney General's Office. Defendant Chapman acted under color of state law to cause the civil commitment deprivations set out in this Complaint, including Defendant Chapman's participation in a civil commitment hearing and meeting with Defendant Alexander, Defendant Whitley, and others from the Attorney General's Office in Rolling Fork, Mississippi on December 4, 2014. Defendant Chapman also acted in concert with Defendant Lee Abraham, Defendant Scot Spragins, and Defendant Lawrence Tucker in unlawfully attempting to extort several million dollars from Dr. Smith as part of an unlawful civil conspiracy in Madison

7

County, Mississippi in August of 2014.  This unlawful August 2014 civil conspiracy included a baseless and illegal scheme by Defendant Abraham, Defendant Chapman, Defendant Spragins, and Defendant Tucker, conveyed through a mediator, that they would "lean" on the Leflore County District Attorney to charge Dr. Smith's wife Mary K. Smith with one or more felonies if Mrs. Smith (as Dr. Smith's agent and power of attorney) did not agree to pay millions of dollars to Defendant Lee Abraham to settle various civil claims. [1]

14.     H. Scot Spragins, Esquire (Defendant Spragins) is an attorney who is a partner in the law firm of Hickman, Goza & Spragins, PLLC of Oxford, Mississippi.  Defendant Spragins is a resident of the state of Mississippi.  Defendant Spragins at all relevant times was working jointly with and in concert with Defendant Chapman, Defendant Tucker, and Defendant Abraham.  Defendant Spragins acted under color of state law to cause the civil commitment deprivations set out in this Complaint, including but not necessarily limited to his participation by phone in a civil commitment meeting with Defendant Chapman and defendants from the Attorney General's Office in Rolling Fork, Mississippi on December 4, 2014. Defendant Spragins also acted in concert with Defendant Lee Abraham, Defendant Chapman, and Defendant Lawrence Tucker in unlawfully attempting to extort several million dollars from Dr. Smith as part of an unlawful civil conspiracy in Madison County, Mississippi in August of 2014.  This unlawful August 2014 civil conspiracy scheme was a baseless scheme by Defendant Spragins and his co-conspirators, conveyed through a mediator, that they would "lean" on the Leflore County District Attorney to charge Dr. Smith's wife Mary K. Smith with

---

[1] At the time these defendants threatened to lean on the District Attorney to charge Mrs. Smith with one or more felonies, Defendant Abraham was demanding approximately $3.5 million to settle.

one or more felonies if Mrs. Smith (as Dr. Smith's agent and power of attorney) did not agree to pay millions of dollars to Defendant Lee Abraham to settle various civil claims.

15.     Lawrence John "Lucky" Tucker, Jr., Esquire (Defendant Tucker) is an attorney who is an associate in the law firm of Hickman Goza & Spragins, PLLC of Oxford. Defendant Tucker is a resident of the state of Mississippi. Defendant Tucker at all relevant times was working jointly with and in concert with Defendant Abraham, Defendant Chapman, Defendant Spragins, and others. Defendant Tucker acted in concert with Defendant Lee Abraham, Defendant Scot Spragins, and Defendant Ralph E. Chapman in unlawfully attempting to extort several million dollars from Dr. Smith as part of an unlawful civil conspiracy in Madison County, Mississippi in August of 2014. This unlawful August 2014 civil conspiracy scheme was a baseless scheme by Defendant Tucker and his co-conspirators, conveyed through a mediator, that they would "lean" on the Leflore County District Attorney to charge Dr. Smith's wife Mary Smith with one or more felonies if Mrs. Smith (as Dr. Smith's agent and power of attorney) did not agree to pay millions of dollars to Defendant Lee Abraham to settle various civil claims.

16.     Defendant Reb McMichael, M.D. (Defendant McMichael) is a defendant in his individual capacity. Defendant McMichael is a psychiatrist at the Mississippi State Hospital, where Defendant McMichael is the service chief for the Mississippi State Hospital forensic unit. Defendant McMichael at all relevant times was and is acting jointly with Defendant Hood, Defendant Eubank, Defendant Savoie, Defendant McGinnis, Defendant Chastain, and Defendant DMH, under color of state law.

17.     Luke Savoie (Defendant Savoie) is a defendant in his individual capacity. Defendant Savoie is an employee of the Mississippi State Hospital, where he is employed as a

9

Behavioral Health Clinician III, and where Defendant Savoie has at all relevant times served as the "Psychology Supervisor" for the state hospital forensic unit. Defendant Savoie at all relevant times was and is acting jointly with Defendant McMichael under color of state law.

18.    Paul Scott McGinnis, M.D. (Defendant McGinnis) is a defendant in his individual capacity. Defendant McGinnis is a psychiatrist at the Mississippi State Hospital. Defendant McGinnis conducted an unlawful and patently illegal three (3) month evaluation of Dr. Smith on May 7, 2015, more than three (3) months after Dr. Smith's involuntary inpatient civil commitment, and after Dr. Smith's initial civil commitment had already terminated. Defendant McGinnis admitted that the evaluation was "late." Defendant McGinnis used his May 7, 2015 unlawful evaluation, along with Defendant McMichael, Defendant Chastain, Defendant Hood, and others, to unlawfully detain Dr. Smith past the termination of his involuntary inpatient civil commitment. Defendant McGinnis at all relevant times was acting jointly with Defendant McMichael and Defendant Chastain under color of state law.

19.    James G. Chastain (Defendant Chastain) is a defendant in his individual capacity. Defendant Chastain is the director of the Mississippi State Hospital. Defendant Chastain's actions have been and are intentional, unlawful, and show a deliberate indifference for the rights of Dr. Smith, all as set out in this Complaint.

20.    The Mississippi Department of Mental Health (Defendant DMH) is a Mississippi State agency that receives federal funds that are to be used for treating persons with mental illness. Defendant DMH has intentionally and with willful indifference deprived Dr. Smith of rights to which Dr. Smith is entitled under Title II of the *Americans With Disabilities Act* and under Section 504 of the Rehabilitation Act of 1973. The United States Department of Justice (DOJ) investigated Defendant DMH and the Mississippi State Hospital and issued

10

DOJ's findings in a letter dated December 22, 2011. In DOJ's letter, DOJ stated its findings that the State of Mississippi, which includes Defendant DMH, was in violation of Title II of the *Americans With Disabilities Act*. Defendant DMH has intentionally and with deliberate indifference failed to provide services to Dr. Smith to which he is entitled under Title II of the *Americans With Disabilities Act*. The DOJ letter of December 22, 2011 is attached to this Complaint as Exhibit "A" and is incorporated into this Complaint for all purposes as if copied in full herein.

21.     John Does 1 through 20 are unnamed defendants whose identity is unknown at this time, and who may have acted jointly and/or in concert with one or more named defendants in perpetrating one or more of the constitutional torts and/or other causes of action set out in this Complaint.

## COUNT I:  42 U.S.C §1983 and 42 U.S.C. §1985

22.     Dr. Smith incorporates all paragraphs of this Complaint and all exhibits into Count I as if copied in full herein.

23.     Defendant Hood, Defendant Abraham, Defendant Eubank, Defendant Alexander, Defendant Whitley, Defendant Chapman, Defendant Spragins, Defendant McMichael, Defendant Savoie, Defendant McGinnis, and Defendant Chastain (the 1983 defendants) acting under color of state law, have individually, jointly, and in concert with each other, unlawfully deprived Dr. Smith of his Fifth and Fourteenth Amendment substantive and procedural due process rights, and his Fourteenth Amendment right to equal protection of the laws. The 1983 defendants have also acted to deprive Dr. Smith of his right under the Fourth Amendment to be free from unreasonable searches and seizures of Dr. Smith's person. The 1983 defendants' actions show a gross and willful indifference to Dr. Smith's rights and are

11

therefore depriving Dr. Smith of his Eighth Amendment right to be free from cruel and unusual punishment.

24.     The unlawful and intentional acts by the 1983 defendants and other defendants under color of state law include, but are not necessarily limited to:

a. The 1983 defendants pursued an involuntary inpatient civil commitment of Dr. Smith in total disregard of the due process and equal protection guarantees of Mississippi's civil commitment statutes, which are codified at Mississippi Code §41-21-61 through §41-21-107. Defendant Chapman, as a private attorney for Defendant Abraham, was allowed by attorneys from the Attorney General's Office to jointly participate under color of state law in a December 4, 2014 civil commitment meeting in Rolling Fork, Mississippi regarding Dr. Smith's civil commitment. The December 4, 2014 Rolling Fork meeting at the Sharkey County courthouse was part of a civil commitment hearing set by specially appointed Chancellor Hollis McGehee. This Rolling Fork civil commitment meeting included Defendants Alexander and Whitley, and included civil commitment affiant Timothy Jones. Defendant Spragins, a private attorney for Defendant Abraham, was not present but consulted with Defendant Chapman by phone about Dr. Smith's civil commitment. Defendant Chapman and Defendant Spragins were willfully acting in concert with and jointly with other defendants under color of state law, who were employees of the state of Mississippi, and can therefore be held personally liable with state actors in this case. At the time of this December 4, 2014 Rolling Fork meeting, the due process civil commitment time limits had already passed, because Dr. Smith's civil commitment petition had been on file for fifty (50) days—well past the mandatory deadlines for conducting the required civil commitment hearings and evaluations. The 1983 defendants' actions at and around the time of the December 4, 2014 Rolling Fork civil commitment hearing constitute

12

willful and intentional deprivations of Dr. Smith's due process and equal protection rights under federal law, and under state law.

   b.   Defendants Hood, Eubank, McMichael, Savoie, McGinnis, and Chastain unlawfully and with willful indifference have been and are depriving Dr. Smith of his substantive and procedural due process rights, are depriving Dr. Smith of his equal protection rights, are depriving Dr. Smith of his Fourth Amendment right to be protected against unreasonable searches and seizures of his person, and have been and are depriving Dr. Smith of his rights under the *Americans With Disabilities Act* by:

   i.   Unlawfully placing Dr. Smith on a long-term forensic unit level system shortly after admission to the state hospital, with multiple levels of approximately six (6) months each, even though Dr. Smith was admitted under the civil commitment statutes that apply to every citizen;

   ii.   Failing to conduct the three (3) month evaluation mandated by §41-21-82, and then using an unlawful and untimely May 7, 2015 "evaluation" that was a farce to unlawfully detain Dr. Smith at the forensic unit at the Mississippi State Hospital;

   iii.   Failing to conduct the evaluation mandated by §41-21-99, and then continuing to hold Dr. Smith at the forensic unit of the Mississippi State Hospital in the absence of the evaluations required by §41-21-99;

   iv.   Failing to obtain the medically indicated violence risk assessment that Defendant McMichael stated under oath on October 8, 2014 should be conducted in the near future:  The Mississippi State Hospital entered into a contract with the Tulane Department of Psychiatry and Behavioral Sciences (and related Tulane entities) on March 10, 2015 to conduct psychopharmacological and violence risk assessments of Dr. Smith, at the rate of $550.00 per hour for Tulane's services.  Defendant Chastain signed the Tulane contract, and Defendant

13

McMichael was a direct participant in the services that Tulane was supposed to provide for Dr. Smith. The violence risk assessment was due to Defendant McMichael by April 27, 2015, and as of February 22, 2016, Defendant Chastain and Defendant McMichael have unlawfully failed to obtain the medically indicated violence risk assessment of Dr. Smith. A true and correct copy of the Tulane contract that was in place from March 4, 2015 to June 30, 2015 is attached and is marked Exhibit "B".

     v.    Failing to properly utilize or even consider community-based treatment for Dr. Smith, as required by Title II of the *Americans With Disabilities Act*;

     vi.    Unlawfully and illegally holding Dr. Smith after the termination of his involuntary inpatient civil commitment, which terminated by operation of law, at the latest, on April 20, 2015 for two (2) independent legal reasons: (1) the chancery court order of commitment by its own language terminated three (3) months after Dr. Smith's January 20, 2015 involuntary commitment court order; and (2) the involuntary inpatient commitment could last **no longer** than three months under Mississippi Code §41-21-73(4).

     vii.    Unlawfully and illegally providing so-called psychology treatment for Dr. Smith by utilizing <u>unlicensed</u> state hospital employees for psychology treatment: Defendant Savoie has acted for many months as Dr. Smith's case manager and as the forensic unit "Psychology Supervisor"—even though Defendant Savoie does not have a license to practice psychology. State hospital employees Barbara Hilton and Michelle Guy have provided unlawful and unlicensed psychology treatment to Dr. Smith at the request of Defendants McMichael and Savoie, even though Ms. Hilton and Ms. Guy do not have a license to practice psychology. Practicing psychology without a license is a crime punishable by 60 days in jail and a $300.00 fine for each separate offense. See: Mississippi Code §73-31-23.

viii.    Defendant McMichael, Defendant Chastain, and Defendant Savoie have unlawfully directed state hospital employees to use leather and metal restraints on Dr. Smith during Dr. Smith's involuntary civil commitment admission.  Mississippi Code §41-21-102(1) contains specific mandates for the use of restraints, including the specific mandate that "**Each** use of a restraint and reason for such use **shall** be made part of the clinical record of the patient **under the signature of the director of the treatment facility**" (§41-21-102(1). Defendant McMichael, Defendant Chastain, and Defendant Savoie unlawfully and illegally used and use restraints on Dr. Smith under color of state law, without the signature of the Director, and in violation of §41-21-102(1).

Unlawful use of restraints and other violations of Mississippi's civil commitment statutes, as set out in this Complaint, are crimes punishable as follows:

> …**any person** who violates **any provision** contained in Sections 41-21-61 through 41-21-107 **shall be guilty** of a misdemeanor and upon conviction be fined not less than Five Hundred Dollars ($500.00) nor more than One Thousand Dollars ($1,000.00), or imprisoned in the county jail not exceeding one (1) year, or both (emphasis added).

Mississippi Code §41-21-107.

This unlawful use of restraints, and allowing this unlawful use of restraints, under color of state law, is disgraceful, and, more importantly, is unlawful and illegal.  The multiple unlawful uses of restraints are clear deprivations of Dr. Smith's Fourteenth Amendment substantive and procedural due process rights, and violate Dr. Smith's Fourth Amendment right to be secure from unreasonable seizures of his person.  This unlawful use of restraints shows a gross indifference to Dr. Smith's rights as a civilly committed patient, and also violates the Eighth Amendment prohibition against cruel and unusual punishment.

15



Dr. Smith outside of the Hinds County Chancery Court, prior to a December 18, 2015
civil commitment hearing showing the illegal use of restraints.

25.     Defendant DMH, Defendant Hood, Defendant Eubank, Defendant Chastain,

Defendant McMichael, and Defendant Savoie, along with other named defendants, have

actively and jointly engaged in acts designed to illegally incarcerate Dr. Smith at the maximum

security forensic unit at the Mississippi State Hospital.  These acts by DMH and these

defendants are particularly egregious, because DMH, Defendant McMichael, Defendant

Eubank, Defendant McGinnis, Defendant Chastain, and Defendant Hood have actively sought the continuing incarceration of Dr. Smith under color of state law, even though the DMH has no statutory authority under its enabling statutes to pursue the involuntary civil commitment of a mentally ill citizen.  The acts of Defendant DMH and other defendants are in total and absolute conflict with Defendant DMH's federal lawful obligations under the *Americans With Disabilities Act* to promote community-based mental health treatment for patients---**not** to actively work with Defendant Hood, Defendant Eubank, Defendant McGinnis, Defendant McMichael, Defendant Savoie, Defendant Chastain, and others, to pursue the incarceration and open-ended institutionalization of a mentally ill patient (Dr. Smith).  These willful and unlawful actions by Defendant Hood, Defendant Eubank, Defendant McMichael, Defendant McGinnis, Defendant Chastain, and Defendant Savoie rise to the level of constitutional torts as set out in this Count I, all in violation of 42 U.S.C. §1983 and in violation of 42 U.S.C. §1985. See again:  Exhibit "A" (DOJ findings letter).

26.     In December of 2014, and continuing thereafter, Defendant Eubank and Defendant McMichael, individually, and as part of a conspiracy, conspired together and acted in concert with each other in a joint scheme to incarcerate Dr. Smith at the forensic unit of the Mississippi State Hospital.  Defendant Eubank drafted an Affidavit in December of 2014 that Defendant McMichael executed, attempting to show that Dr. Smith is dangerous.  Defendant Eubank and Defendant McMichael also worked in concert with each other in 2014 and in 2015 to use Dr. Smith's confidential and private medical records, without Dr. Smith's permission or knowledge, to further their unlawful plan and scheme to incarcerate Dr. Smith at the Mississippi State Hospital at the state hospital forensic unit.

17

27.    All named defendants, individually and acting in concert and conspiracy with each other, have proximately caused damages to Dr. Smith under Count I of this Complaint.

**COUNT II:  VIOLATIONS OF *THE AMERICANS WITH DISABILITIES ACT***

28.    Dr. Smith incorporates all paragraphs of this Complaint and all exhibits into this Count II as if copied in full herein.

29.    Defendant DMH, Defendant Chastain, Defendant Eubank, Defendant McMichael, Defendant Savoie, and Defendant Hood acted individually and in concert with each other to deprive Dr. Smith of his rights under the *Americans With Disabilities Act* by causing Dr. Smith to be incarcerated and institutionalized in the maximum security forensic unit at the Mississippi State Hospital for months after Dr. Smith's involuntary civil commitment terminated.

30.    Defendant DMH, Defendant Chastain, Defendant Eubank, Defendant McMichael, Defendant Hood, and Defendant Savoie, and Defendant McGinnis engaged in and are engaging in a concerted and unlawful effort to block Dr. Smith from receiving any community-based treatment.

31.    Defendant DMH, Defendant Chastain, Defendant McMichael and Defendant Savoie have unlawfully and illegally provided unlicensed psychology treatment to Dr. Smith during his involuntary civil commitment admission, which included unlicensed psychology treatment by Defendant Savoie, unlicensed psychology treatment by state hospital employee Michelle Guy, and unlicensed psychology treatment by state hospital employee Barbara Hilton.

32.    Defendant DMH, Defendant McMichael, Defendant Savoie, and Defendant Chastain have deprived Dr. Smith of his rights under the *Americans With Disabilities Act* by

18

failing to provide the mental health treatment and services that were to be provided by Tulane under the Tulane contract (see Exhibit "B"-Tulane Contract).

33.    Defendant DMH, Defendant McMichael, Defendant Chastain, Defendant Savoie, and other defendants are violating the *Americans With Disabilities Act* by failing to provide mental illness treatment to Dr. Smith in accordance with applicable federal laws and standards, as set out in the DOJ findings letter that is attached as Exhibit "A."

34.    Defendant DMH, Defendant Hood, Defendant Eubank, Defendant McMichael, Defendant Chastain, Defendant McGinnis, and Defendant Savoie have engaged in actions and inactions that are willful and that show a deliberate indifference to Dr. Smith's rights under the *Americans With Disabilities Act*—especially given that the defendants' egregious conduct continues more than four (4) years after being put on notice by the Department of Justice on December 22, 2011 that the state of Mississippi and the Mississippi State Hospital are violating the *Americans With Disabilities Act*. See again: Exhibit "A" (DOJ findings letter). [2]

35.    Defendant DMH, Defendant Hood, Defendant Eubank, and Defendant McMichael have actively and jointly engaged in unlawful acts designed to incarcerate Dr. Smith at the maximum security forensic unit at the Mississippi State Hospital.  These unlawful acts by DMH are particularly egregious, because DMH has actively sought the continuing incarceration of Dr. Smith, even though the DMH has no statutory authority to seek the involuntary civil commitment of a mentally ill citizen.  The acts of Defendant DMH are in total and absolute conflict with Defendant DMH's lawful obligations under the *Americans With Disabilities Act* to promote community-based mental health treatment for patients---

_____

[2] The Department of Justice findings letter shows that Defendant Hood, Defendant Eubank, Defendant Chastain, and Defendant DMH (through its Executive Director) were all provided with a copy of the December 22, 2011 DOJ letter detailing ongoing ADA violations.  See:  Exhibit "B" pages 34-35.

19

**not** to actively work with Defendant Hood, Defendant Eubank, and Defendant McMichael to seek the unlawful incarceration and open-ended institutionalization of a mentally ill patient (Dr. Smith).  See again:  Exhibit "A" (DOJ findings letter).

36.     All of the named defendants by their actions and inactions have proximately caused damages to Dr. Smith under Count II of this Complaint.

## COUNT III:  COMPENSATORY DAMAGES

37.     Dr. Smith incorporates all paragraphs of this Complaint and all exhibits into this Count III as if copied in full herein.

38.     The Court, following a trial by jury, should enter judgment jointly and severally against all named defendants in favor of Dr. Smith for all compensatory damages awarded by the jury, including but not limited to:  lost business profits; lost income; lost value for one or more of Dr. Smith's business interests; pain and suffering; mental and emotional distress; loss of consortium with his wife Mary K. Smith; and any other compensatory damages that are proved at trial.

## COUNT IV:  42 U.S.C. §1988 and PUNITIVE DAMAGES

39.     Dr. Smith incorporates all paragraphs of this Complaint and all exhibits into this Count IV as if copied in full herein.

40.     The Court, following a trial by jury, should award to Dr. Smith all reasonable attorney fees, costs, expert witness fees, and other expenses to which he may be entitled.

41.     The named defendants' conduct is and has been malicious, intentional, unlawful, illegal, reckless, and with callous disregard for Dr. Smith's rights under federal law.

42.     The Court, following a trial by jury, should enter judgment jointly and severally against all named defendants in favor of Dr. Smith for all punitive damages awarded by a jury, and for all fees and costs that are recoverable under 42 U.S.C. §1988.

## COUNT V:  STATE LAW CLAIMS, INCLUDING CLAIMS NOTICED UNDER THE MISSISSIPPI TORT CLAIMS ACT

43.     Dr. Smith incorporates all paragraphs of this Complaint and all exhibits into this Count V as if copied in full herein.

44.     Pursuant to the Mississippi Tort Claims Act (Mississippi Code §11-46-1 through §11-46-23), Dr. Smith, through counsel, provided notice to various state entities and state employees, including Defendant DMH, Defendant Chastain, Defendant McMichael, and Defendant McGinnis, of claims against these state entities and state actors, including but not limited to claims for: false imprisonment, civil conspiracy, invasion of privacy, and intentional infliction of emotional distress.

45.     A true and correct copy of Dr. Smith's August 24, 2015 tort claims notice is attached as Exhibit "C" and is incorporated into this Count V as if copied in full herein.

46.     The state of Mississippi never responded to the August 24, 2015 tort claims notice, except to acknowledge receipt of the notice.

47.     This Court has pendent and supplemental jurisdiction over these state law claims under 28 U.S.C. §1367.

48.     This Court should award all damages, costs, attorney fees, and expenses that are recoverable for Dr. Smith, following a trial by jury.  Dr. Smith hereby incorporates all claims and causes of action in his Tort Claims Act Notice into this Count V as if copied in full herein, and he hereby asserts all claims in the Tort Claims Notice against the applicable named defendants.

## COUNT VI:  STATE CIVIL CONSPIRACY CLAIMS AGAINST DEFENDANTS ABRAHAM, CHAPMAN, SPRAGINS, AND TUCKER

49.     Dr. Smith incorporates all paragraphs of this Complaint and all exhibits into this Count VI as if copied in full herein.

50.     This Court has pendent and supplemental jurisdiction over these state law claims under 28 U.S.C. §1367.

51.     Defendant Abraham, Defendant Chapman, Defendant Spragins, and Defendant Tucker engaged in a civil conspiracy to unlawfully accomplish a lawful purpose by overtly seeking to extort several million dollars from Dr. Smith during an August 2014 mediation in Madison County, Mississippi.

52.     Defendants' plan and scheme included an unlawful and baseless threat of extortion through a mediator to "lean" on the District Attorney of Leflore County, Mississippi to indict Dr. Smith's wife Mary K. Smith for one or more felonies if Mrs. Smith, as Dr. Smith's agent, would not agree to pay millions of dollars to Defendant Abraham to settle various civil claims.

53.     This threat by Defendants Abraham, Chapman, Spragins, and Tucker to "lean" on the district attorney to pursue criminal charges against Mrs. Smith were real and serious, because one or more of these defendants in Count VI had been passing documents and/or other information to the Leflore County District Attorney for use and leverage against Dr. Smith in the state court criminal cases.[3]  There is also reason to believe that the Leflore County District Attorney has provided information from Dr. Smith's criminal case file to these Count VI defendants for use in Defendant Abraham's civil case against Dr. Smith.

---

[3] The state court criminal cases are not ongoing and cannot go forward because Dr. Smith is incompetent to proceed legally, and there is no substantial likelihood that Dr. Smith will be restored to competency in the foreseeable future.  See: *Jackson v. Indiana*, 406 U.S. 715 (1972).

54.     Defendants Chapman and Spragins participated in a civil conspiracy with Defendants Alexander, Whitley, and Eubank during and around the time of the December 4, 2014 Rolling Fork civil commitment meeting to wrongly continue the unlawful incarceration of Dr. Smith beyond the specific mandatory time limits that are set out in the Mississippi civil commitment statutes (§§41-21-61 through 41-21-107).

55.     The wide-ranging civil conspiracy by Defendant Abraham, Defendant Chapman, Defendant Spragins, and Defendant Tucker included the agreement of these defendants to unlawfully obtain money from Dr. Smith by engaging in overt acts such as (a) plotting and conveying the unlawful extortion threat at the August 2014 mediation; (b) the unlawful and wrongful participation in the December 4, 2014 Rolling Fork civil commitment hearing and meeting, to assist other defendants in continuing the illegal and unlawful civil commitment incarceration of Dr. Smith; and (c) exchanging information with the district attorney to help put pressure on Dr. Smith and his wife Mary to pay large sums of money to Defendant Abraham.

56.     The ultimate goal of these wrongful overt acts by Defendant Abraham, Defendant Chapman, Defendant Spragins, and Defendant Tucker, in furtherance of the conspiracy, was to pressure Dr. Smith, through his wife Mary K. Smith and others, to pay large sums of money to Defendant Abraham, which in turn would also benefit Defendant Abraham's attorneys (Chapman, Spragins, and Tucker).

57.     These unlawful acts by Defendant Abraham, Defendant Chapman, Defendant Spragins, and Defendant Tucker have caused damage to Dr. Smith including but not limited to: unlawful incarceration and institutionalization of Dr. Smith; lost business profits; lost income; lost value for one or more of Dr. Smith's business interests; pain and suffering; mental and

emotional distress; loss of consortium with his wife Mary K. Smith; and any other compensatory damages that are proved at trial.

58.    This Court should enter a judgment jointly and severally against Defendant Abraham, Defendant Chapman, Defendant Spragins, and Defendant Tucker for all compensatory and punitive damages, costs, and attorney fees that are recoverable by Dr. Smith under applicable law.

WHEREFORE, PREMISES CONSIDERED, Dr. Smith, through counsel, prays that the Court will enter judgment jointly and severally against all named defendants for all compensatory and punitive damages that may be awarded by a jury pursuant to the claims set out in this Complaint, plus any other damages that Dr. Smith proves at trial.

Dr. Smith prays that the Court will award all reasonable attorney fees, costs, and expenses that are recoverable under applicable federal and/or state law, and enter judgment jointly and severally against all named defendants for all such fees, costs, and expenses.

Dr. Smith prays for such other relief to which he may be entitled in the premises, including all pre-judgment and post-judgment interest allowed by law.

Dr. Smith explicitly requests a jury trial.

Respectfully submitted, this 22nd day of February, 2016.

Ralph Arnold Smith, Jr., Plaintiff

By:    _____

William C. Bell, Bar Number 9328
Bell Law Firm, PLLC
PO Box 1876
Ridgeland, MS 39158
601-956-0360
email:
williambell.law@gmail.com

24